UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK WHITESIDE,<br><br>        Plaintiff,<br><br>vs.<br><br>HOVER-DAVIS, INC. and UNIVERSAL INSTRUMENTS CORP.,<br><br>        Defendants. | Civil Action No. 6:19-cv-6026-CJS<br><br>**THIRD AMENDED COMPLAINT FOR COMPENSATORY, PUNITIVE, AND LIQUIDATED DAMAGES**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Mark Whiteside, by and through his attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges, upon personal knowledge and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

1. Plaintiff Mark Whiteside brings this action against Defendant Hover-Davis, Inc. ("Hover-Davis") and Universal Instruments ("Universal") (together, "Defendants") for declaratory and monetary relief for injuries Plaintiff sustained as a result of Defendant's unlawful, retaliatory, and discriminatory actions against Plaintiff because of his disability, for their failure to pay wages and lawful overtime, and for their failure to provide accurate wage statements.

2. Plaintiff now brings this proceeding for economic damages, compensatory damages, punitive damages, liquidated damages, interest, attorney's fees, and costs pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, the Fair Labor Standards Act § 207; NYLL §§ 191 and 193; and the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL").

1

## PARTIES

3. Plaintiff was employed by Defendants from August 1999 until June 18, 2018. At all relevant times, he worked as a Quality Engineer or Repair Organization Technician. He worked primarily at the Rochester facility during his course of employment with Defendants. At all relevant times, Plaintiff was an "employee" within the meaning of all relevant statutes. He currently and at all relevant times resides in Spencerport, New York.

4. Defendant Hover-Davis is a New York Corporation with a principal place of business at 100 Paragon Driver, Rochester, New York 14624.

5. Defendant Hover-Davis is a subsidiary of and is wholly owned by Defendant Universal Instruments.

6. At all relevant times, Defendant Hover-Davis has met the definition of Plaintiff's "employer" under all relevant statutes.

7. Upon information and belief, Defendant Hover-Davis maintains control, oversight, and direction over their operations and employment practices.

8. At all times hereinafter mentioned, Defendant Hover-Davis employed Plaintiff who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials have moved in or produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

9. Defendant Hover-Davis's gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

10. Defendant Universal Instruments is a Delaware corporation with a principal place of business at 33 Broome Corporate Parkway, Conklin, New York 13748.

11. At all relevant times, Defendant Universal Instruments rented the facility in Rochester where Plaintiff worked.

12. Defendant Universal Instruments had a gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

13. Upon information and belief, Defendant Universal Instruments maintains control, oversight, and direction over their operations and employment practices.

14. Upon information and belief, Defendants use the same Human Resources Department.

15. At all relevant times, Defendant Universal Instruments was a joint-employer of Plaintiff.

## JURISDICTION & VENUE

16. This court has subject matter jurisdiction over this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Fair Labor Standards Act ("FLSA), 29 U.S.C. § 203, pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiff's New York State Human Rights ("NYSHRL") and New York Labor Law ("NYLL") claims pursuant to 28 U.S.C. § 1367.

17. This court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

18. This court has personal jurisdiction over Defendants because they reside in and routinely transact business in Rochester, New York.

19. Venue is proper in the United States District Court, Western District of New York pursuant to 28 U.S.C. § 1391, because the violations that give rise to Plaintiff's claims occurred in this District.

## PROCEDURAL REQUIREMENTS

20. Mr. Whiteside filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about March 25, 2019, well within 300 days of the discriminatory termination.

21. Mr. Whiteside received a Dismissal and Notice of Right to Sue from the EEOC, dated May 31, 2019, and less than ninety (90) days has elapsed between the filing of this Complaint and Mr. Whiteside's receipt of the Right to Sue Letter from the EEOC.

## FACTUAL ALLEGATIONS

22. Plaintiff has a disability and was employed by Defendants as an exempt employee; however, he was unlawfully converted to a non-exempt employee from 2012 to 2016.

23. Defendant Hover-Davis is a company that specializes in the design and manufacture of advanced automation assembly equipment. Specifically, they design, develop, and manufacture feeder technology.

24. Defendant Hover-Davis owns a manufacturing facility in Rochester, New York, where it manufactures and designs equipment.

25. Defendant Universal Instruments wholly owns Defendant Hover-Davis.

26. Quality Engineers were classified as exempt employees. They monitored the production lines and ensured quality of the products by developing and sometimes carrying out tests for the feeders.

27. Repair Organization Technicians were classified as non-exempt employees. They exclusively fixed feeders.

28. In August 1999, Plaintiff began working at Defendant Hover-Davis as a Quality Engineer. Over the years, Plaintiff worked on many projects and gained expertise in many parts of the business.

29. In 2012, Plaintiff was asked to switch positions, and was *de facto* a Repair Organization Technician, a manual job that was classified as non-exempt by Defendants.

30. As a Repair Organization Technician, Plaintiff repaired feeders that did not pass a final test. Plaintiff frequently replaced bad motors, out-of-specification parts, broken parts, and misassembled parts.

31. Upon information and belief, the individual who had the position before Plaintiff Whiteside was non-exempt, paid hourly, and required to punch in.

32. Upon information and belief, every other Repair Organization Technician between 2012 and 2016 was a non-exempt employee.

33. Plaintiff was kept as an exempt salaried employee despite the fact that he was doing the work of a Repair Organization Technician, and all other Repair Organization Technicians were non-exempt employees who were paid hourly.

34. During this time, Plaintiff worked more approximately 45-50 hours every week, and was not paid overtime.

35. Plaintiff knows he worked at least 45 hours a week during that time because his regularly scheduled day was nine hours a day, five days a week.

36. Plaintiff often stayed for an extra hour past his nine-hour shift when he was working as a Repair Organization.

37. Defendants failed to provide Plaintiff with accurate wage statements as required by state law.

38. In 2016 Plaintiff stopped working as a Repair Organization Technician and began working as a Quality Engineer.

39. Beginning in 2017, Plaintiff began working on the prosthetic arm part of the business.

40. In August 2017, Plaintiff was diagnosed with cancer.

41. From October 20, 2017 until December 20, 2017, Plaintiff underwent intensive radiation once a day for thirty-five (35) days and, during radiation, chemotherapy treatments once a week.

42. Plaintiff took disability leave until April 31, 2018 due to his illness and utilized a Company policy known as "Salary Continuance" which allowed him to receive his full salary for up to 130 working days within an established 52-week period of total disability.

43. Plaintiff took close to six months of his eligible leave, but not all of it.

44. During Plaintiff's leave, Defendants hired a temporary Quality Assurance Engineer to fulfill his work on the prosthetic arm.

45. During his employment, Plaintiff never had a negative informal or formal performance review.

46. Upon returning to work, Plaintiff was treated coldly by Operations Manager Ronald Bradley, his supervisor's supervisor.

47. Mr. Bradley told Plaintiff that Defendants would no longer be manufacturing prosthetic arms, which was Plaintiff's main task. Rather than continuing his work developing and maintaining the quality control system for the arm – work that was available and distributed to other less experienced employees – Plaintiff spent the next few weeks performing any tasks that were available for him, such as inspecting motors that failed.

48. On June 18, 2018, Plaintiff was called into Mr. Bradley's office. Mr. Bradley told Plaintiff that his employment was terminated because there was no work available for him. He gratuitously added that Plaintiff's disability had nothing to do with the termination.

49. Upon information and belief, Defendants retained employees who had the same responsibilities as Plaintiff and intended to place those employees in other positions once the final round of arms were produced and delivered. None of those employees had cancer.

50. Upon information and belief, at least four (4) other employees with a cancer diagnosis were terminated after returning from disability leave.

51. Upon information and belief, there were other jobs that Plaintiff could have done at Defendant Hover-Davis.

**FIRST CLAIM FOR RELIEF**
**(Disability Discrimination Under the Americans with Disability Act –**
**Discriminatory Termination)**

52. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegations as if fully set forth herein.

53. At all relevant times, Plaintiff was an "employee" of Defendants under the ADA, 42 U.S.C. § 12111(4).

54. At all relevant times, Defendants are "employers" under the ADA, 42 U.S.C. § 12111(5).

55. Plaintiff is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the ADA; or, in the alternative, Defendants regarded or perceived Plaintiff as suffering from a physical or mental impairment that rendered him disabled within the meaning of the ADA.

56. Plaintiff is, and has been at all relevant times, otherwise qualified for his position

with Defendants; he was, and is, able to perform the essential functions of the position.

57. Defendants supposed reason for terminating Plaintiff because production on the prosthetic arms was ceasing was false and pretextual due to the fact that Defendants retained other employees who had the same responsibilities as Plaintiff and intended to place those employees in other positions once the final round of arms were produced and delivered.

58. These other employees were similarly situated in that they had the same responsibilities as the Plaintiff.

59. These other employees were also outside his protected class by not having, or previously having the disability of cancer.

60. Defendants discriminated against Plaintiff by terminating his employment because of his disability, his record of disability, and/or because of Defendants' perception that Plaintiff was disabled.

61. By engaging in such discrimination, Defendants violated the ADA.

62. As a direct and proximate result of the Defendants' discriminatory acts, Plaintiff suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

63. Since Defendants engaged in their discriminatory practices with malice or with reckless disregard for Plaintiff's federally protected rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**(Disability Discrimination in Violation of The New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.*)**

8

64. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegations as if fully set forth herein.

65. From 2017 until his termination, Plaintiff suffered from cancer, which constitutes a disability under the NYSHRL.

66. Plaintiff is otherwise qualified to perform his job.

67. Plaintiff informed Defendants of his disability and took time off due to his disability.

68. Upon returning from his leave, Plaintiff was terminated shortly thereafter. Other individuals who did not have cancer were not terminated.

69. Defendants took a materially adverse employment action against Plaintiff by terminating him.

70. In their disability-based discriminatory actions alleged in violation of the New York State Human Rights Law, Defendants acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling him to an award of punitive damages.

71. Under the New York State Human Rights Law, N.Y. Exec. Law § 297.10, Plaintiff is entitled to recover reasonable attorneys' fees and costs of this action.

72. Pursuant to New York Civil Rights Law § 40-d, Plaintiff is notifying the Office of the Attorney General of his claims under the New York State Human Rights Law.

### THIRD CLAIM FOR RELIEF
**(Failure to Pay Overtime Premiums in Violation of the Fair Labor Standards Act, 29 U.S. Code § 201)**

73. Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

74. Defendants failed to compensate Plaintiff at time and a half rate for all hours worked over 40 hours per week at all relevant times.

75. Upon information and belief, Plaintiff was misclassified as an exempt worker and was a *de* facto Repair Organizations Technician from January 2012 to on or around January 26th, 2016.

76. Upon information and belief, at all relevant times his immediate supervisor Juliann Nelson and Operations Manager Ronald Bradley knew he was doing the work of a *de facto* Repair Organization Technician and assigned him to do the work of this role.

77. At all relevant times, Plaintiff worked on average of five (5) hours overtime per week.

78. Under FLSA § 207, Plaintiff is entitled to be paid at time and a half rate for all hour worked over 40 hours per week for Defendants, including but not limited to the on-average five (5) hours per week overtime that Plaintiff worked when he was unlawfully classified as an exempt employee.

79. Defendants violations of the FLSA were willful because Defendants, with reckless disregard as to whether their conduct was prohibited under statute, failed to pay the statutorily required overtime rate for the hours overtime worked by the Plaintiff.

80. Because Defendants' violations of the FLSA were willful, a 3-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

81. Plaintiff incorporates by reference all the allegations in the preceding paragraphs.

### FOURTH CLAIM FOR RELIEF
**(Failure to Pay Overtime Premium in Violation of Article 19 the New York Labor Law)**

82. Plaintiff incorporates by reference all the allegations in the preceding paragraphs.

83. At all relevant times, Plaintiff was an employee and the Defendants were employers within the meaning of the New York Labor Law.

84. The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

85. Defendants knowingly, willfully, and in bad faith failed to pay Plaintiff overtime wages to which they were entitled under the New York Labor Law.

86. By Defendants' failure to pay Plaintiff premium overtime wages for hours worked in excess of 40 hours per week, they willfully violated the New York Labor Law Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

87. Also, Defendants violated NYLL §§ 191 and 193 by failing to pay Plaintiff at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the class period.

88. Due to Defendants' willful violations of the New York Labor Law, Plaintiff and is entitled to recover from Defendants his unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest, as provided by NYLL § 198.

### FIFTH CLAIM FOR RELIEF
**(Failure to Provide Accurate Wage Statements in Violation of the New York Labor Law, NYLL § 195)**

89. Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

90. At all relevant times, Plaintiff was an employee and Defendants were employers within the meaning of the New York Labor Law.

91. The notice and record-keeping requirements of NYLL § 195 of New York Labor Law apply to Defendants.

92. New York Labor Law requires that employers furnish their employees at every payment with a statement showing, among other things, the number of regular and overtime hours worked during the pay period.

93. Defendants failed to furnish Plaintiff with statements showing the correct number of regular hours worked and overtime hours worked during the pay period.

94. Upon information and belief, Defendant was furnished with wage statements that did not account for his non-exempt status and entitlement under the FMLA for overtime pay.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

95. That Defendants are found to have violated the provisions of the New York State Human Rights Law as to Plaintiff;

96. That Defendants are found to have violated the Federal Fair Labor Standards Act as to Plaintiff;

97. That Defendants are found to have violated the provisions of the New York Labor Law as to Plaintiff;

98. That Defendants' violations as described above are found to be willful;

99. An award to Plaintiff for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

100. That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

101. An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable law; and

102. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

103. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues so triable.

DATED:
June 6, 2019
New York, New York

                THE LAW OFFICE OF
                CHRISTOPHER Q. DAVIS, PLLC

                /s
                Mariyam Hussain
                Christopher Q. Davis
                The Law Office of Christopher Q. Davis
                225 Broadway, Suite 1803
                New York, New York 10007
                646-430-7930