UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| MARK WHITESIDE, | DECISION and ORDER |
| Plaintiff, | |
| -vs- | 19-CV-6026 CJS |
| HOVER-DAVIS, INC., UNIVERSAL INSTRUMENTS CORP., | |
| Defendants. | |

_____

INTRODUCTION

Plaintiff commenced this action against his former employer, alleging violations of the Americans with Disabilities Act ("ADA"), the Fair Labor Standards Act ("FLSA"), the New York State Human Rights Law ("NYHRL"), and the New York Labor Law ("NYLL"). Now before the Court is Defendants' motion to dismiss the Third Amended Complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").  The application is granted as to Plaintiff's federal claims, and the Court declines to exercise jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

BACKGROUND

The following facts are taken from Plaintiff's Third Amended Complaint.  Between August 1999 and June 18, 2018, Plaintiff was employed by defendant Hover-Davis, Inc., which is a subsidiary of Defendant Universal Instruments Corporation.  At all relevant times Plaintiff's job title was "Quality Engineer," and Hover-Davis classified him as a

1

salaried employee who was exempt from overtime-pay requirements under the FLSA.

As a "Quality Engineer," Plaintiff's usual job duties were to "monitor[ ] the production lines and ensure[ ] quality of the products by developing and sometimes carrying out tests" of the company's products.[1]  However, between 2012 and 2016, someone at Hover-Davis "asked" Plaintiff to repair products that had not passed their quality control tests, which "frequently" involved "replac[ing] bad motors, out-of-specification parts, broken parts, and misassembled parts."[2]  Plaintiff contends that his job duties between 2012 and 2016 were the duties of a "Repair Organization Technician," which is a non-exempt position "exclusively" involving the repair of products.[3]  Although Plaintiff was always classified as an exempt Quality Engineer, he contends that between 2012 and 2016 he was a "de facto" non-exempt Repair Organization Technician, and therefore entitled to overtime pay for any week in which he worked more than forty hours.[4]  In that regard, Plaintiff contends that Hover-Davis wrongfully failed to treat him as a non-exempt employee between 2012 and 2016, and also failed to provide him with proper wage statements.

In August 2017, Plaintiff was diagnosed with cancer.  Between approximately October 2017 and April 2018, he took paid disability leave while he received medical treatment.  Upon returning to work, Plaintiff contends that he was "treated coldly" by his "supervisor's supervisor," Ronald Bradley ("Bradley").  Bradley subsequently informed Plaintiff that Hover-Davis was ceasing its production of "prosthetic arms," which had been

---

[1] Third Amended Complaint at ¶ 26.
[2] Third Amended Complaint at ¶ 30.
[3] Third Amended Complaint at ¶ 27 ("Repair Organization Technicians were classified as non-exempt employees.  They exclusively fixed feeders.").
[4] Plaintiff alleges that he worked more than forty hours during "every week" that he was a "*de facto*" Repair Organization Technician. Third Amended Complaint at ¶ 34.

2

"Plaintiff's main task."[5]  For a few weeks thereafter, Plaintiff, "[r]ather than continuing his work developing and maintaining the quality control system for the [prosthetic] arm – work that was available and distributed to less experienced employees – [ ] spent the next few weeks performing any tasks that were available for him, such as inspecting motors that failed."[6]  On June 18, 2018, Bradley terminated Plaintiff's employment.  Bradley indicated that there was no work available for Plaintiff, and that Plaintiff's cancer diagnosis was not a factor in the decision to terminate his employment.  Plaintiff maintains that his firing was discriminatory and due to his real-or-perceived disability, and states:

> Upon information and belief, Defendants retained employees who had the same responsibilities as Plaintiff and intended to place those employees in other positions once the final round of [prosthetic] arms were produced and delivered.  None of those employees had cancer.

(Third Amended Complaint at ¶ 49).   The Third Amended Complaint asserts that "[t]hese employees were similarly situated in that they had the same responsibilities as the Plaintiff."[7]  Plaintiff further contends that Hover-Davis fired other employees who had been diagnosed with cancer, stating, "Upon information and belief, at least four (4) other employees with a cancer diagnosis were terminated after returning from disability leave."[8]

On January 8, 2019, Plaintiff commenced this action.  The original Complaint [#1] asserted disability-discrimination claims under the ADA and NYHRL, and wage-and-hour claims under the FLSA and NYLL.  On March 11, 2019, Defendants moved to dismiss the Complaint, and on March 25, 2019, Plaintiff filed an Amended Complaint [#9] as of right.  On April 1, 2019, Defendants moved to dismiss the Amended Complaint, and on April 26,

---

[5] Third Amended Complaint at ¶ 47.
[6] Third Amended Complaint at ¶ 47.
[7] Third Amended Complaint at ¶ 58.
[8] Third Amended Complaint at ¶ 50.

3

2019, the parties stipulated to allow Plaintiff to file a Second Amended Complaint [#16]. On May 14, 2019, Defendants moved to dismiss the Second Amended Complaint, and on June 6, 2019, the parties stipulated to allow Plaintiff to file the Third Amended Complaint [#21].

Similar to the earlier complaints, the Third Amended Complaint [#21] purports to state five causes of action: 1) disability discrimination under the ADA; 2) disability discrimination under the NYHRL;  3) FLSA Overtime violation; 4) overtime violation in violation of NY Labor Law Art. 19; and 5) failure to provide accurate wage statements in violation of NY Labor Law § 195.

On July 3, 2019, Defendants filed the subject motion [#23] to dismiss the Third Amended Complaint pursuant to FRCP 12(b)(6).  In pertinent part, Defendants contend that the FLSA claim is time-barred because this action was commenced more than two years after Defendants allegedly stopped treating Plaintiff as a *de facto* non-exempt employee.[9]  Defendants note that the Third Amended Complaint attempts to plead that the alleged FLSA violation was "willful," which, if true, would extend the limitations period to three years.  However, Defendants maintain that the allegation of willfulness is merely conclusory, and that the two-year limitations period therefore applies.  Defendants also contend, *inter alia*, that the Third Amended Complaint fails to state a claim under the ADA, in part because the allegations designed to show that Plaintiff was fired under circumstances suggesting a discriminatory intent are conclusory and made only upon information and belief.

---

[9] See, Third Amended Complaint at ¶ 75 (the alleged FLSA violation ended "on or around January 26th, 2016.").  This action was commenced more than two years thereafter.

On July 11, 2019, Plaintiff filed papers [#25] opposing Defendants' motion, and on July 31, 2019, Defendants filed a reply [#28].  On February 13, 2020, counsel for the parties appeared before the undersigned for oral argument.  During oral argument, among other things the Court asked Plaintiff's counsel how the pleading plausibly alleges that the FLSA violation was willful, to which counsel responded that Defendants' willfulness is shown by the fact that the Defendants were allegedly aware that Plaintiff was doing tasks typically performed by non-exempt employees.  The Court has considered the parties' submissions and the arguments of counsel.

## ANALYSIS

Motions Under Rule 12(b)(6)

The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

5

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL

6

5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.' ") (quoting *Iqbal* ).

A plaintiff cannot avoid the necessity of pleading a plausible claim supported by factual allegations merely by asserting statements "upon information and belief" without explaining the basis for the belief. *See, D'Alessandro v. City of New York*, 713 F. App'x 1, 6–7 (2d Cir. 2017) ("To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality.  D'Alessandro's complaint contains mere conclusory allegations of fraud, *see, e.g.*, FAC ¶ 14 ("Upon information and belief, a signed copy of the indictment was never filed with the court...."); FAC ¶ 23 ("Upon information and belief, Defendant Morris never obtained a signed indictment until the superseding indictment, and thus proceeded with a wholly unauthorized initial prosecution."), none of which we accept as true.  D'Alessandro has thus not sufficiently nudged his claims of fraud or forgery—to the extent that he makes them—across the line from conceivable to plausible.") (citing *Twombley* and *Iqbal*, other citations, footnote and internal quotation marks omitted); *see also, Sharpe v. City of New York*, 560 F. App'x 78, 80 (2d Cir. 2014) ("[Plaintiff] merely alleges that he "never kept his family relation with his father a secret," that "Defendant HYNES knew Wellington Sharpe had been a candidate for public office in KINGS COUNTY prior to the time of Plaintiff SHARPE's hiring," *and that, "[u]pon information and belief*," Sharpe's father's campaign against Parker "was a fact known to Defendant HYNES and other members of the KINGS COUNTY D.A.'S OFFICE."  *These statements are "wholly*

*conclusory," id. at 561, 127 S.Ct. 1955, because they are unsupported by factual allegations about how or why Hynes and other unidentified members of the KCDAO knew about the elder Sharpe's candidacy.*" (citing *Twombly*; emphasis added).

The FLSA Claim is Time-Barred

"The limitations period for FLSA claims is two years or, if the violation was willful, three years. 29 U.S.C. § 255(a)." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 199 n. 4 (2d Cir. 2013). Defendants maintain that the FLSA claim in this action is time-barred, because this action was commenced more than two years after the FLSA claim allegedly accrued, and the Third Amended Complaint fails to plausibly state a willful violation.

"Although a statute of limitations defense is an affirmative defense that must ordinarily be asserted in a motion for summary judgment, a defendant may nevertheless assert such a defense on a motion to dismiss if it appears on the face of a complaint that Plaintiff's claims fall outside of the limitations period." *Zhongwei Zhou v. Wu*, No. 14-CV-1775 RJS, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3, 2015) (citations omitted). In this action, it is evident from the face of the Third Amended Complaint that Plaintiff's FLSA claim is time-barred unless the pleading plausibly alleges willful conduct, since the pleading alleges that the FLSA violation ended in January 2016, and this action was commenced almost three years later, in January 2019.

The standard for willfulness under the FLSA is clear: "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citation omitted).

*conclusory," id. at 561, 127 S.Ct. 1955, because they are unsupported by factual allegations about how or why Hynes and other unidentified members of the KCDAO knew about the elder Sharpe's candidacy.*" (citing *Twombly*; emphasis added).

The FLSA Claim is Time-Barred

"The limitations period for FLSA claims is two years or, if the violation was willful, three years. 29 U.S.C. § 255(a)." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 199 n. 4 (2d Cir. 2013). Defendants maintain that the FLSA claim in this action is time-barred, because this action was commenced more than two years after the FLSA claim allegedly accrued, and the Third Amended Complaint fails to plausibly state a willful violation.

"Although a statute of limitations defense is an affirmative defense that must ordinarily be asserted in a motion for summary judgment, a defendant may nevertheless assert such a defense on a motion to dismiss if it appears on the face of a complaint that Plaintiff's claims fall outside of the limitations period." *Zhongwei Zhou v. Wu*, No. 14-CV-1775 RJS, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3, 2015) (citations omitted). In this action, it is evident from the face of the Third Amended Complaint that Plaintiff's FLSA claim is time-barred unless the pleading plausibly alleges willful conduct, since the pleading alleges that the FLSA violation ended in January 2016, and this action was commenced almost three years later, in January 2019.

The standard for willfulness under the FLSA is clear: "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citation omitted).

In this action, Plaintiff's Memorandum of Law [#25-1] in opposition to Defendants' motion asserts that the Third Amended Complaint plausibly pleads willfulness because it states that Defendants acted "with reckless disregard as to whether their conduct was prohibited under the statute." However, such allegation is a conclusory statement that the Court is not required to accept as true.[10] The pleading does not contain any additional facts suggesting that Defendants actually had an inkling that Hover-Davis might possibly violate the FLSA by having Plaintiff perform tasks that were typically performed by a non-exempt employee. For example, the pleading does not allege that Plaintiff ever complained about the situation, or that anyone at Hover-Davis ever mentioned the FLSA or otherwise acted in a manner suggesting an awareness of the alleged illegality about which Plaintiff complains. Plaintiff's argument on this point therefore lacks merit.

Nevertheless, as mentioned earlier, at oral argument Plaintiff's counsel offered a somewhat different explanation by asserting that that the Third Amended Complaint plausibly pleads a willful FLSA violation because it indicates that Hover-Davis was *aware* that Plaintiff was performing work duties that had previously been performed by a non-exempt employee. However, even assuming that assertion is true, the pleading still gives no indication that Hover-Davis was aware that its action could *violate the FLSA*.[11] *Compare, Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 192 (E.D.N.Y. 2015)

---

[10] *See, e.g., Raymond v. City of New York*, No. 15-CV-6885-LTS-HBP, 2017 WL 892350, at *5 (S.D.N.Y. Mar. 6, 2017) ("Plaintiffs' conclusory allegations that the Defendants' actions were 'willful and malicious' and 'reckless and intentional' are mere formulaic recitations and thus fail to meet the requirement of plausible factual pleading established by *Twombly* and *Iqbal*.").

[11] Even assuming *arguendo* that an employer could willfully violate the FLSA merely by having an exempt employee temporarily perform duties that had previously been performed within the company by a non-exempt employee, the pleading's allegations on this point are arguably too conclusory to be plausible. For example, the pleading offers only a bare assertion that Plaintiff was told to perform the duties of a non-exempt employee, but offers no supporting facts indicating who told him to perform such work, who the non-exempt employee was, or how Plaintiff knows that such employee was classified as non-exempt.

("[A]lthough the [complaint] does not offer much by way of specific allegations of willfulness, it does suggest defendants' knowledge or reckless disregard of their conduct being violative of the FLSA. *Chime alleges, for example, that he discussed with his manager that he had not been paid overtime, and that the defendants advised Chime and other employees that the company was unable to pay the owed overtime because they lacked cash on-hand.*") (emphasis added; internal citations omitted); *see also, Patino v. Brady Parking, Inc.*, No. 11CV3080 (DF), 2017 WL 5198192, at *12 (S.D.N.Y. Oct. 31, 2017) ("A defendant willfully violates the FLSA when he knows about the law and also knows that he is violating it.  Recklessness, however, will also satisfy the 'willfulness' requirement, and recklessness requires only a showing that a defendant was subjectively aware of a substantial danger that its compensation system violated the FLSA, but chose to stick with it nonetheless.") (citations and internal quotation marks omitted).  If the Court accepted Plaintiff's reasoning on this point, which it does not, it would effectively eliminate the willfulness requirement from the statute and make all FLSA claims subject to the three-year limitations period.

In sum, the Third Amended Complaint makes a conclusory assertion that Defendants "willfully" violated the FLSA but does not allege any supporting facts plausibly suggesting that Hover-Davis actually acted willfully or reckless with regard to potentially violating the FLSA.  The FLSA claim is therefore time-barred since it was filed beyond the two-year limitations period without any plausible allegation that Defendants acted willfully.

<u>The Pleading Fails to State a Plausible ADA Claim</u>

Defendants have now made three separate motions to dismiss this action under FRCP 12(b)(6), each raising essentially the same arguments.  With regard to the ADA

claim, Defendants have consistently asserted that the pleading fails to plausibly allege facts from which even a minimal inference of discrimination can be drawn.  In that regard, Defendants contend, *inter alia*, that the allegations that other employees working on prosthetic arms were reassigned, that those employees were similarly situated to Plaintiff, and that other employees with cancer were fired, are all too conclusory to plausibly allege discriminatory intent.  The Court agrees with Defendants.

The Second Circuit has explained the legal principles applicable to motions to dismiss claims under the ADA as follows:

> The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).
>
> ***
>
> [To satisfy the pleading requirements of *Twombly* and *Iqbal* in an ADA case,] "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."

*Dawson v. New York City Transit Auth.*, 624 F. App'x 763, 765-767 (2d Cir. 2015) (citations and footnotes omitted).

In the context of an ADA claim, a plaintiff may demonstrate "at least minimal support for the proposition that the employer was motivated by discriminatory intent" by showing that he was treated less-favorably than similarly-situated employees who did not share his disability:

> [W]hether Dr. Henderson alleges enough facts to provide "at least minimal support for the proposition" that Defendants' actions were motivated by discrimination turns on whether she plausibly alleges that she was treated less favorably than similarly situated employees who did not share her . . . disability.  A plaintiff may support an inference of discrimination by

11

>demonstrating that similarly situated employees outside of her protected class were treated more favorably, but in order to make such a showing, the plaintiff must compare herself to employees who are similarly situated in all material respects. Showing similarity in all material respects requires that the plaintiff and the comparator were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct. Ultimately, that is a question of fact for the jury. <u>At the motion to dismiss stage, however, a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated. Thus, well-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim and conclusory allegations of selective treatment are insufficient.</u>

*Henderson v. Physician Affiliate Grp. of New York P.C.*, No. 18-CV-3430 (JMF), 2019 WL 3778504, at *4 (S.D.N.Y. Aug. 12, 2019) (emphasis added; citations and internal quotation marks omitted).

Bare or conclusory allegations, or allegations made only "upon information and belief," that a claimant was treated differently than persons outside of the protected class are not sufficient to state a plausible claim. *See, Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) ("Plaintiffs also allege '[u]pon information and belief' that the Academy promoted to sixth grade 'non-Muslim students from families of non-Albanian origin' who had test scores and grades similar to Abedin. . . . Even if these allegations might be 'consistent' with a Title VI violation, they stop short of the line between possibility and plausibility of entitlement to relief. Indeed, although plaintiffs repeatedly assert that defendants took those actions "because of" plaintiffs' Muslim faith and Albanian origin, Am. Compl. ¶ 26, J.A. 43, their complaint is devoid of factual allegations that would reasonably give rise to such an inference. Plaintiffs do not, for instance, assert that any defendant referenced their religion or national origin, much less

that they did so in a derogatory manner. Thus, their "naked allegation" that they were treated differently from non-Muslim, non-Albanians cannot demonstrate a plausible entitlement to Title VI relief.") (citations and internal quotation marks omitted); *see also, id.* at *16 ("No different conclusion is warranted because defendants control the academic records of students *whom plaintiffs allege, on information and belief, were similarly situated to Abedin and yet promoted to sixth grade. While pleading on the basis of information and belief is generally appropriate where information is particularly within defendants' knowledge and control,*[12] *even such pleadings must be grounded in a good-faith basis in fact for believing that such comparators exist.*") (emphasis added; citation and internal quotation marks omitted); *Karim v. New York City Health & Hosps. Corp.*, No. 17CIV6888ATOTW, 2019 WL 1495098, at *6 (S.D.N.Y. Mar. 6, 2019) ("Plaintiff's 'naked assertions' concerning similarly-situated white, non-Muslim applicants receiving privileges 'upon information and belief' are insufficient to raise an inference of discrimination and do not provide at least minimal support for the proposition that the employer was motivated by discriminatory intent.") (citations omitted); *Haggood v. Rubin & Rothman, LLC*, No. 14-CV-34L SJF AKT, 2014 WL 6473527, at *12 (E.D.N.Y. Nov. 17, 2014) ("Since all of plaintiffs' allegations, made 'upon information and belief,' pertaining to the treatment non-African American employees received at R & R are entirely conclusory, they are not entitled to the assumption of truth and are insufficient to withstand a motion to dismiss."); *Henderson v. Physician Affiliate Grp. of New York P.C.*, 2019 WL

---

[12] *See, generally, Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.") (citations and internal quotation marks omitted).

3778504, at *5 ("Dr. Henderson's discrimination claims fail. Put simply, she fails to identify any similarly situated comparator, alleging only 'upon information and belief' that the 'other' physicians in the Obstetrics and Gynecology Department — 'none of whom were African-American or disabled, and most of whom were younger' — were treated differently. FAC ¶ 2; see also id. ¶¶ 49, 83. Without more, that is insufficient.").

In this action, the Third Amended Complaint contends that Hover-Davis fired Plaintiff shortly after learning that he had been diagnosed with, and treated for, cancer. More specifically, the pleading indicates that Plaintiff was diagnosed in August 2017, received "intensive" radiation and chemotherapy treatments between October 2017 and December 2017, and then returned to work in May 2018.  Curiously, though, the pleading does not indicate whether such treatments were successful and is silent as to Plaintiff's prognosis.  Consequently, for all the Court knows, Plaintiff may have been cancer-free upon returning to work.  At the very least, the pleading leaves it unclear whether Plaintiff had any health-related limitations upon returning to work, or whether Hover-Davis would have had any reason to perceive Plaintiff as being disabled following his treatment and return to work.

Nevertheless, Plaintiff was terminated from his position on June 18, 2018. Significantly, however, Plaintiff admits that at such time there had been a major change in Hover-Davis's business operations.  Specifically, Hover-Davis had decided to stop "manufacturing prosthetic arms, which was Plaintiff's main task." Third Amended Complaint at ¶ 47.  In sum, Hover-Davis no longer needed the type of work which comprised Plaintiff's "main" job duty, and there is no suggestion that Hover-Davis's decision to cease manufacturing prosthetic arms had anything to do with Plaintiff or his

14

alleged disability.

Despite that, the pleading contends that Plaintiff's termination was related to his cancer diagnosis for essentially four reasons: 1) upon Plaintiff's return to work following his cancer treatments, his "supervisor's supervisor" treated him "coldly"[13]; 2) when Plaintiff was terminated he was told that it had "nothing to do with" his cancer diagnosis; 3) "upon information and belief," Hover-Davis retained other employees "who had the same job responsibilities as Plaintiff" and who did not have cancer; and 4) "upon information and belief" Hover-Davis had, at some previous time, terminated four other employees who had been diagnosed with cancer and had taken disability leave.

However, with regard to the employees who, "upon information and belief," were allegedly retained after Plaintiff was terminated, the pleading offers no clue to their identities and no explanation for why Plaintiff believes that they were retained. Neither does the pleading offer any information about such employees other than that they allegedly had "the same responsibilities as Plaintiff,"[14] which is insufficient by itself to plausibly allege that they were similarly situated in all material respects. This type of information does not strike the Court as the type that would be peculiarly within the possession and control of the defendant, but rather, as the type of information that a plaintiff would need to make a good-faith claim of discrimination in the first place. Similarly, as to the four employees who, "upon information and belief," were allegedly fired after being diagnosed with cancer, the pleading offers no clue as to their identities,

---

[13] This is a conclusory assertion that does not give rise to an inference of discriminatory intent on the basis of disability.

[14] This lack of detail is even more striking considering that Plaintiff worked at Hover-Davis almost twenty years and would presumably know this information if it were true. It seems that Plaintiff is making speculative allegations that he hopes to substantiate through a discovery fishing expedition. However, as mentioned earlier, the Federal Rules of Civil Procedure do not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.

15

no explanation for why Plaintiff believes that such employees were terminated, and no time frame.  In sum, while the standard at the pleading stage is low, Plaintiff's Third Amended Complaint nevertheless fails to plausibly plead "at least minimal support for the proposition that the employer was motivated by discriminatory intent."  Consequently, the ADA claim is dismissed.

### The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State–Law Claims

The Court having dismissed all claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the claims asserted under New York State law are dismissed without prejudice.

## CONCLUSION

Defendants' motion to dismiss [#23] is granted with regard to Plaintiff's claims under the FLSA and ADA, with prejudice.  The Court declines to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3), and those claims are dismissed without prejudice.  The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated: Rochester, New York
       February  28, 2020

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge